1

2

3

4

5

6

7

8                               UNITED STATES DISTRICT COURT
                               WESTERN DISTRICT OF WASHINGTON
9                                         AT SEATTLE

10   JOY POFFENROTH-MARTIN,                )
                                           )
11               Plaintiff,                )        CASE NO. C06-1467-JCC-MJB
                                           )
12          v.                             )        REPORT AND
                                           )        RECOMMENDATION
13   MICHAEL J. ASTRUE,                     )
     Commissioner of Social Security,       )
14                                          )
                 Defendant.                 )
15   _____ )

16          Plaintiff Joy Poffenroth-Martin appeals to the District Court from a final decision of the

17   Commissioner of the Social Security Administration (the "Commissioner") denying her

18   application for disability insurance benefits under Title II of the Social Security Act.  For the

19   reasons set forth below, it is recommended that the Court REVERSE the Commissioner's

20   decision and REMAND for further proceedings.

21                               I.  PROCEDURAL HISTORY

22          Plaintiff filed an application for disability insurance benefits on January 17, 2002,

23   alleging inability to work beginning June 15, 2000, due to lupus, rheumatoid arthritis, Sjorgren's

24   syndrome, and fibromyalgia, resulting in fatigue, weakness, pain, and depression.  Tr. 58.  After

25

26   REPORT AND RECOMMENDATION
     PAGE - 1

the application was denied initially and on reconsideration, Plaintiff received a hearing before Administrative Law Judge ("ALJ") Cheri Filion.  ALJ Filion issued an unfavorable decision on May 27, 2005, finding Plaintiff not disabled and denying benefits.  Tr. 14-20.  On August 24, 2006, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 5-8.  On October 10, 2006, Plaintiff timely filed her appeal with this Court.

## II.  THE PARTIES' POSITIONS

Plaintiff requests that the Court reverse the Commissioner's decision, and order the Commissioner to find Plaintiff disabled based upon the substantial evidence in the record, or, in the alternative, remand for further administrative proceedings.  Plaintiff argues the ALJ erred by:  1) improperly rejecting medical testimony in assessing the severity of Plaintiff's physical limitations; 2) failing to properly consider all of Plaintiff's physical and mental impairments in assessing her residual functional capacity; 3) failing to properly consider certain medical testimony in assessing the severity of Plaintiff's psychiatric limitations; 4) improperly rejecting Plaintiff's credibility; 5) failing to consider the testimony of a lay witness; 6) failing to consider all of the evidence of record in determining Plaintiff's residual functional capacity; 7) failing to properly consider whether Plaintiff is capable of performing the demands of her past work.  Defendant responds that the Commissioner's decision should be affirmed because the ALJ applied correct legal standards and supported her decision with substantial evidence.

## III.  STANDARD OF REVIEW

The court may set aside the Commissioner's denial of Social Security disability benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence is defined as more than a mere scintilla but less than a preponderance; it is such relevant evidence

REPORT AND RECOMMENDATION
PAGE - 2

as a reasonable mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Where the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion which must be upheld. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

## IV. EVALUATING DISABILITY

The claimant bears the burden of proving that he is disabled. *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423 (d)(1)(A).

The Social Security regulations set out a five-step sequential evaluation process for determining whether claimant is disabled within the meaning of the Social Security Act. *See* 20 C.F.R. § 416.920. At step one, the claimant must establish that he or she is not engaging in any substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). At step two, the claimant must establish that he or she has one or more medically severe impairments or combination of impairments. If the claimant does not have a "severe" impairment, he or she is not disabled. *Id.* at § (c). At step three, the Commissioner will determine whether the claimant's impairment meets or equals any of the listed impairments described in the regulations. A claimant who meets one of the listings is disabled. *See Id.* at § (d).

At step four, if the claimant's impairment neither meets nor equals one of the impairments listed in the regulations, the Commissioner evaluates the claimant's residual functional capacity and the physical and mental demands of the claimant's past relevant work.

REPORT AND RECOMMENDATION
PAGE - 3

1    *Id.* at § (e).  If the claimant is not able to perform his or her past relevant work, the burden

2    shifts to the Commissioner at step five to show that the claimant can perform some other work

3    that exists in significant numbers in the national economy, taking into consideration the

4    claimant's residual functional capacity, age, education, and work experience.  *Id.* at § (f);

5    *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999).  If the Commissioner finds the claimant

6    is unable to perform other work, then the claimant is found disabled.

7                          V.  SUMMARY OF THE RECORD EVIDENCE

8            Plaintiff was 34 years old at the alleged disability onset date, and 38 years old at the time

9    of the hearing before the ALJ.  Tr. 52.  She reported she has a ninth grade education and

10   training as a medical receptionist (Tr. 64, 331), and her past relevant work experience is as a

11   medical receptionist.  (Tr. 59).  Plaintiff alleges disability beginning June 15, 2000, due to lupus,

12   rheumatoid arthritis, Sjorgren's syndrome, and fibromyalgia.  Tr. 58.  Plaintiff asserts that she

13   has the following problems that make her feel like she cannot work: chronic pain, chronic

14   fatigue, low stamina, weakness, and depression.  She testified she has trouble consistently

15   working and has difficulty with daily functioning activities because of depression, high fatigue

16   level, decrease in strength, and chronic pain.  Tr. 333-45.  Evidence relevant to Plaintiff's

17   allegations is incorporated into the discussion below.

18                              VI.  THE ALJ'S DECISION

19           At step one of the sequential disability determination, the ALJ found that Plaintiff has

20   not engaged in substantial gainful activity since the alleged onset of her disability.  Tr. 15.  At

21   step two, she determined that Plaintiff has the following severe impairments: lupus, degenerative

22   disc disease, and status-post pelvic fracture.  *Id*.  At step three, the ALJ found that these

23   impairments do not meet or equal one of the listed impairments in Appendix 1, Subpart P of the

24   Regulations.  Tr. 15-16.

25   REPORT AND RECOMMENDATION
26   PAGE - 4

At step four, the ALJ determined Plaintiff's residual functional capacity ("RFC").  The ALJ did not explicitly set forth Plaintiff's RFC exertion level, but discussed it with respect to limitations which would be required in order for Plaintiff to perform light or, alternatively, sedentary work.  Tr. 18.  Specifically, the ALJ found that Plaintiff retains the functional capacity to:

> . . .lift up to 10 pounds occasionally.  She could not do climbing of ladder/rope/scaffolds.  She could only occasionally do climbing of ramp/stairs, balancing, stooping, kneeling, crouching, and crawling.  She must avoid concentrated exposure to extreme cold, vibration, and hazards (machinery, heights, etc.).  I note that her activity level is more consistent with the ability to engage in light work, however, given her allegations of fatigue and body pain, limits to sedentary work take into account that she is may [sic] have times where she is more fatigued and have less ability to be consistently on her feet.

Tr. 18.

Based on the above RFC determination, the ALJ concluded that Plaintiff is able to perform her past relevant work as a medical receptionist.  Tr. 19.  In reaching this conclusion, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible.  Tr. 17-18.  Therefore, the ALJ concluded that Plaintiff was not disabled at any time through the date of the decision and is not eligible for disability insurance benefits.  Tr. 19.

## VII.  DISCUSSION

A.    ALJ's Assessment of Plaintiff's Physical and Mental Limitations

1.  Treating Physician Dr. Brodie's Opinion

Plaintiff argues that the ALJ improperly rejected the opinion of treating physician, Carl Brodie, M.D., regarding her physical and mental restrictions and ability to work.  Specifically, Plaintiff argues that her inability to work a full-time, normal work schedule, even at a sedentary level, as opined by Dr. Brodie, was improperly rejected in that the ALJ did not provide clear and convincing reasons for rejecting those opinions.  Defendant argues that the ALJ's rejection of Dr. Brodie's opinion was supported by substantial evidence in that it was in contradiction

REPORT AND RECOMMENDATION
PAGE - 5

1  with Plaintiff's activities and supported by the opinions of the medical consultants to the State

2  agency.

3    The law requires that special deference be given to the opinion of a treating physician.

4  The opinions of treating and examining sources are given greater weight than the opinions of

5  non-examining sources. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Medical

6  conclusions of treating physicians are accorded special weight because the continuity of the

7  physicians' dealings with the claimants allows them to assess the claimants' problems more

8  accurately. *See Winans v. Bowen*, 853 F.2d 643, 647 (9th Cir. 1987); *Embrey v. Bowen*, 849

9  F.2d 418, 421-22 (9th Cir. 1988). And while the ALJ "is not bound by the uncontroverted

10 opinions of the claimant's physicians on the ultimate issue of disability. . .he cannot reject them

11 without presenting clear and convincing reasons for doing so." *Matthews v. Shalala*, 10 F.2d

12 678, 680 (9th Cir. 1993) (quoting *Montigo v. Secretary of Heath & Human Servs.*, 729 F.2d

13 599, 601 (9th Cir. 1984)).

14   Additionally, Social Security regulations "give more weight to the opinion of a specialist

15 about medical issues related to his or her area of specialty than to the opinion of a source who is

16 not a specialist." 20 C.F.R. 404.1527(d)(5); 416.927(d)(5). To reject an uncontradicted opinion

17 of a treating or examining doctor, an ALJ must state clear and convincing reasons that are

18 supported by substantial evidence. *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir.1995);

19 *Magallanes v. Bowen*, 881 F.2d 747, 751-55 (9th Cir. 1989). If a treating or examining

20 doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by

21 providing specific and legitimate reasons that are supported by substantial evidence. *Id.* "The

22 ALJ can meet this burden by setting out a detailed and thorough summary of the facts and

23 conflicting clinical evidence, stating his interpretation thereof, and making findings." 

24 *Magallanes*, 881 F.2d at 751.

25

26 REPORT AND RECOMMENDATION
 PAGE - 6

Here, the ALJ set forth the following rationale for rejecting Dr. Brodie's opinion:

> His conclusions are not supported by the treatment notes and appear to consider her family demands when that is not an issue that I can consider in my determination.  Other than noted above in February 15, 2002, there is no evidence of record of severe flare ups of her lupus and there are very few references to lupus flares in the records prior to that date going back several years.  So it is very hard to see the improvement alleged after work ended when there is very little in the way of medical documentation of significant problems when she was still working.  In addition, as noted, her activities indicate that she has been much more active than Dr. Brodie's analysis suggests.

Tr. 18

Here, the ALJ considered the opinions of non-treating, non-examining medical experts and evidence regarding the range of activities that Plaintiff has been able to perform, however, the ALJ did not explain the weight accorded to the medical experts' opinions, as is required.  20 C.F.R. 404.1527(f); SSR 96-6p[1].  The ALJ stated only that they were "considered."  Tr. 18.  However, based on the ALJ's reasoning and conclusion, it appears to the Court that the reviewing experts' opinions outweighed that of the treating physician.  Where the record shows that the ALJ did not specifically state how much weight was given to the reviewing physicians, or what type of work Plaintiff is capable of performing[2], it is clear from the record that the ALJ's decision to reject the opinion of the treating physician, a rheumatology specialist, is not supported by substantial evidence.

The ALJ found that Plaintiff's medical history contained "little in the way of ongoing problems with lupus" and characterized Dr. Brodie's notes as concluding that Plaintiff's lupus

---

[1] 20 C.F.R. 404.1527(f)(2)(ii) provides in relevant part, "[u]nless the treating source's opinion is given controlling weight, the administrative law judge **must explain** in the decision the weight given to the opinions of a State agency medical or psychological consultant..."

[2] Discussed further, *supra*.

REPORT AND RECOMMENDATION
PAGE - 7

1    condition had become "stable," (Tr. 17).  This conflicts with the record taken from both

2    Plaintiff's testimony and records of Dr. Brodie which outline that Plaintiff was without health

3    insurance for a period of about nine months out of the approximate four-year period, that she

4    had otherwise been in close contact with her doctor, and that she had consistently taken a

5    variety of medication for treatment of her diseases, pain management, and psychological

6    difficulties.  Dr. Brodie also reported that when Plaintiff was attempting to work, she regularly

7    went home early, came in late, and frequently missed days of work because of her chronic

8    fatigue and pain.

9         Additionally, Plaintiff's limitations are supported by Dr. Brodie's declaration and

10   Plaintiff's husband's statements which reflect a solid history of ongoing treatment and

11   management of Plaintiff's disease symptoms.  This record shows Plaintiff had difficulty taking

12   care of herself, her family, and her household, especially in combination with working full-time.

13   Dr. Brodie opined that Plaintiff is unable to work because of the effects of her disease and

14   refutes that she is unable to work because she has other responsibilities.  In discussing what the

15   ALJ finds as inadequate medical evidence, she notes that Plaintiff has had few severe "flare up"

16   episodes of lupus in the prior two years, yet, the ALJ does not give clear and convincing

17   reasons for discounting the record made by Dr. Brodie.  Based on this examination of the

18   record, and as discussed below, I conclude the ALJ's decision to reject Plaintiff's treating

19   physician's opinion is not supported by substantial evidence in the record.

20        2.  Plaintiff's Mental Impairments

21         Regarding Plaintiff's alleged mental impairments, the ALJ found there was "no

22   evidence" of psychiatric impairment.  Tr. 16, 18.  Plaintiff has not been diagnosed with any

23   severe mental impairment, however, the record contains multiple references to Plaintiff's

24   symptoms of depression and anxiety as contributing factors to her alleged inability to work.

25
     REPORT AND RECOMMENDATION
26   PAGE - 8

1   First, Plaintiff's physician noted in his treatment notes and in his declaration, that she had

2   anxiety and depression, which were probably related to her diseases.  Tr.16-17.  Second,

3   Plaintiff had been prescribed multiple drugs for anxiety and depression, and she testified to

4   having problems with depression.  Tr. 337.  Plaintiff's husband also submitted a questionnaire

5   in which he reported that her usual mood is "generally good but [she] has times of depression

6   lasting 3 or more days at a time" and that "[s]he is often depressed and angered by her physical

7   inability to participate in activities to the extent and frequency as before her illness."  Tr. 84, 87.

8

9        Plaintiff bears the burden to establish a medically determinable impairment.  *Ukolov v.*

10  *Barnhart*, 420 F.3d 1002, 1005 (9th Cir. 2005).  However, the ALJ's finding that there is "no

11  evidence" of mental impairment is not supported by substantial evidence.  The record before the

12  ALJ contained *some* evidence and the ALJ was required to weigh that evidence and clearly set

13  forth whether that evidence rises to the level of a medically determinable impairment.  Thus, the

14  ALJ's conclusion that there was no evidence is plain error.

15        3.  Plaintiff's Credibility

16        Plaintiff argues that the ALJ erred in rejecting her subjective testimony and finding that

17  she was not fully credible.  Here, the ALJ found that Plaintiff's allegations were not totally

18  credible due to the inconsistency between her alleged limitations and her activities of daily

19  functioning.  Tr. 17.  Although the ALJ did not find that Plaintiff had a reputation for

20  malingering, he found that she had made prior inconsistent statements concerning her

21  symptoms, or had failed to seek treatment or follow a course of treatment.  Tr. 16.  Concluding

22  that the medical evidence was scant, he found that her daily activities did not support a finding

23  of disability.  *Id.*

24        Specifically, the ALJ found that,

25

REPORT AND RECOMMENDATION
26  PAGE - 9

1
2
     "[h]er testimony and the medical evidence of record suggest that she could not take care of her household, including the children, and continue to work.  However, after the claimant's husband injured his back, she has dealt with a tremendous increase in household demands in taking care of him and their children."

3
4
*Id*.  The ALJ also noted that she "does grocery shopping, housework, cooking, washing dishes,

5
and laundry."  Tr. 17.   This conclusion is contrary to Plaintiff's testimony and her husband's

6
statements.  For example, Plaintiff testified that her husband helps her out "a lot" with cooking

7
and housework; her 11-year-old son helps her with laundry; her husband and son help her with

8
heavy grocery shopping; she gets tired quickly while cooking meals for the family; and she has

9
to take naps and periodic rests throughout the day due to chronic fatigue and back pain.  Tr. 88;

10
341-43.  Similarly, Plaintiff's husband filed a disability statement[3] in May 2002, in which he

11
reported he has increased his participation in household chores to compensate for her physical

12
inabilities.  Tr. 85.

13
The ALJ's conclusion that Plaintiff, after her husband's back injury, has been very active in

14
taking care of the household, activities which are inconsistent with her allegation of total

15
inability to work (Tr. 17) is not singularly persuasive.  Next, the ALJ noted that Plaintiff also

16
cared for her "three children...aged 11, 2, and 5 at the time of the hearing."  Tr. 17.   The

17
plaintiff testified before the ALJ that she had two children, not three.  This error is noteworthy

18
because it has implications for the reliability of the conclusions the ALJ ultimately reaches.

19
     In the Ninth Circuit, the rule from  *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.

20
1996) provides that, "If a claimant has established an underlying impairment which reasonably

21
could be expected to produce the alleged subjective complaints and there is no evidence of

22
malingering, the ALJ must provide clear and convincing reasons for rejecting the claimant's

23
testimony."   General findings are insufficient; rather, the ALJ must identify what testimony is

24
25
     [3] That the ALJ did not discuss Plaintiff's husband's statement is discussed below.

26
REPORT AND RECOMMENDATION
PAGE - 10

1  not credible and what evidence undermines the claimant's complaints.  *Dodrill v. Shalala*, 12

2  F.3d 915, 918 (9th Cir. 1993); *Varney v. Sec'y of Health and Human Servs.*, 846 F.2d 581, 584

3  (9th Cir. 1988) (*Varney* I).  In assessing credibility, the ALJ may consider, for example: 1)

4  ordinary techniques of credibility evaluations, such as the claimant's reputation for lying and

5  prior inconsistent statements concerning the symptoms; 2) unexplained or inadequately

6  explained failure to seek treatment or to follow a prescribed course of treatment; 3) the

7  claimant's daily activities; and 4) medical evidence tending to discount the severity of subjective

8  claims.  *Rollins v. Massanari*, 261 F.3d 853, 856-57 (9th Cir. 2001).

9        Here, the ALJ noted that although Plaintiff needs daily naps, she drove 3 hours from

10 Southern Washington to Seattle the morning of the hearing.  Tr. 17.  The hearing transcript

11 shows Plaintiff testified that she had to stop to rest along the way.  Tr. 330.  The ALJ also

12 noted that Plaintiff gardens.  Tr. 17.  Plaintiff did not testify that she gardens, however, in the

13 May 2002 questionnaire, Plaintiff's husband reported that she gardens only "2-4 days [sic]

14 month in summer–warm weather."  Tr. 86.  A careful review of the record refutes the ALJ's

15 understanding of the facts of this case and thus undermines his conclusions regarding Plaintiff's

16 credibility.

17        4.  Lay Witness Testimony

18        The lay witness testimony of the plaintiff's husband bears considerable weight inasmuch

19 as it is consistent with Plaintiff's testimony.  Plaintiff's husband testified that the plaintiff "has

20 times of depression lasting 3 or more days at a time" and that "[s]he is often depressed and

21 angered by her physical inability to participate in activities to the extent and frequency as before

22 her illness."  *Id.*  An ALJ must *fully* consider lay witness testimony in certain cases,

23        Disregard of the testimony of friends and family members violates 20 C.F.R. §
          404.1513(e)(2)(1991).  [citations omitted]  According to that regulation, the
24        Commissioner will consider observations by nonmedical sources about how
          impairments affect a claimant's ability to work.  [citation].  More specifically, the

25

REPORT AND RECOMMENDATION
26 PAGE - 11

1

2
Commissioner's Rulings require the ALJ to consider lay witness testimony in certain types of cases.  SSR 88-13 states that where a claimant alleges pain or other symptoms that are "*not supported by medical evidence in the file*, the adjudicator *shall* obtain detailed descriptions of daily activities by directing specific inquiries about the pain and its effects to ... third parties who would be likely to have such knowledge."  SSR 88-13.  The ruling then requires the ALJ to give "full consideration" to such evidence.  *Id.*

3

4

5
*Smolen* at 1288.

6
Defendant argues failure to consider the husband's testimony was harmless error under

7
*Stout v. Commissioner of Social Security*, 454 F.3d 1050 (9th Cir. 2006).  Based on the

8
standard set forth in *Stout*, "A reviewing court cannot consider the error harmless unless it can

9
confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have

10
reached a different disability determination."  *Id.* at 1056.  If fully credited, Plaintiff's husband's

11
testimony supports a conclusion that her physical and mental impairments render her incapable

12
of full-time sedentary work, particularly where Plaintiff's testimony and her treating physician's

13
opinion are consistent.  Accordingly, a reasonable ALJ could find her impairments preclude her

14
from returning to work.  The ALJ's error in failing to provide reasons for rejecting the

15
testimony, or in not considering it at all, was not harmless error.

16
B.    ALJ's RFC Assessment

17
A claimant's RFC is based on what she can still do despite her limitations.  *See* 20

18
C.F.R. § 416.945(a).  As noted above, the ALJ erred in addressing Plaintiff's severe mental and

19
physical impairments, in failing to consider lay witness testimony and because the discrediting of

20
Plaintiff and her physician's testimony was not based on substantial evidence.  The ALJ's

21
determination of Plaintiff's RFC will be affirmed if the ALJ applied the proper legal standard

22
and his decision is supported by substantial evidence.  *Bayliss v. Barnhart* 427 F.3d 1211,1217

23
(9th Cir. 2005)*, citing Morgan*, 169 F.3d at 599.  Here, upon remand, the ALJ necessarily must

24
reevaluate Plaintiff's RFC to consider the combined effect of all of Plaintiff's mental and

25

26
REPORT AND RECOMMENDATION
PAGE - 12

1   physical impairments on her ability to function.

2   C.   <u>ALJ's Conclusion Regarding Past Relevant Work</u>

3        As noted above, the ALJ did not clearly set forth whether Plaintiff was capable of

4   performing light work or sedentary work (Tr. 18), however, the ALJ found Plaintiff able to

5   return to her past relevant work as a medical receptionist "as generally performed in the national

6   economy." Tr. 19. Plaintiff argues that the ALJ rendered an "as generally performed" decision,

7   yet failed to cite any evidence of how the job is generally performed. Defendant argues that the

8   ALJ must have mistakenly written "as generally performed" rather than as actually performed,

9   because the conclusion was apparently based on Plaintiff's description of the job. Defendant's

10  Brief at 11-12. Defendant further asserts that although the ALJ did not cite to the Dictionary of

11  Occupational Titles (D.O.T.), a medical receptionist job is described therein as sedentary.

12  However, without, identifying requirements for any of the postural or environmental limitations

13  addressed in Plaintiff's RFC, the ALJ concluded that Plaintiff could perform the job both as

14  actually and as generally performed. *Id.* Defendant argues the ALJ's conclusions in this regard

15  were also harmless error. *Id.*

16       It is not clear whether the ALJ intended to base the decision regarding the work as

17  actually or as generally performed. It is noteworthy that the Court in *Pinto v. Massanari*, 249

18  F.3d 840 (9th Cir. 2001), remanded, instructing the ALJ to clarify whether his step four

19  determination was based on past relevant work as it was actually performed or as generally

20  performed. *Pinto* at 844-45; 848.

21  //

22  //

23  //

24

25

26  REPORT AND RECOMMENDATION
    PAGE - 13

1

VIII.  CONCLUSION

2          In this case, the ALJ's decision did not articulate specific and legitimate reasons based

3   on substantial evidence in the record, in that it: 1) failed to support a discrediting of the treating

4   physician's opinions; 2) failed to address specific evidence of Plaintiff's alleged mental

5   limitations; 3) failed to support a discrediting of Plaintiff's credibility; and 4) failed to address

6   lay witness testimony.  The Commissioner's determination to deny Plaintiff disability insurance

7   benefits is not supported by substantial evidence and is not free of legal error.  Based on the

8   record evidence, the undersigned recommends that the Commissioner's decision be

9   REVERSED and REMANDED for further proceedings.  A proposed Order accompanies this

10  Report and Recommendation.

11         DATED this 3rd day of January, 2008.

12

13

14

15                                          MONICA J. BENTON
                                            United States Magistrate Judge
16

17

18

19

20

21

22

23

24

25
REPORT AND RECOMMENDATION
26  PAGE - 14